**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Cordero, ) | No. CIV 10-642-TUC-JGZ (LAB) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| Miraval Holding LLC, also known as ) Miraval Holdings LLC; et al., ) | |
| Defendants. ) | |

Pending before the court is a motion for summary judgment filed by the defendants, Miraval Holding, LLC and Miraval Resort Tucson (collectively, Miraval), on May 16, 2012. (Doc. 93)

The plaintiff, Joseph Cordero, worked for Miraval as a busboy, server assistant, and server. (Doc. 54) He was diagnosed with epilepsy in 2006 and was eventually discharged in February of 2010. *Id.* Cordero claims he suffered employment discrimination in violation of the Americans with Disability Act (ADA). *Id.* He further claims he was denied certain rights in connection with his Employee Retirement Income Security Act (ERISA) disability insurance plan. *Id.*

Miraval moves for summary judgment pursuant to Fed.R.Civ.P. 56. It argues it provided Cordero with all the accommodations required by law. It further argues it did nothing to violate ERISA because it is not the plan administrator and has no fiduciary duties.

The court finds that Miraval's summary judgment motion should be granted on the merits. The court does not reach Miraval's alternative argument that Cordero's discrimination charge was filed more than 300 days after the alleged discriminatory acts.

Factual and Procedural Background

Miraval operates a "world-class" resort in Tucson, Arizona. (Doc. 94, ¶ 1) It employs more than 300 persons in a number of capacities including those in its Food and Beverage Department. *Id*. The plaintiff, Joseph Cordero, began working for Miraval as a server assistant on July 16, 2003. (Doc. 94, ¶ 2)

In 2006, Cordero notified Miraval that he had epilepsy. (Doc. 94, ¶ 14) Shortly afterward, he began making informal verbal requests of his managers for certain accommodations. (Doc. 94, Exhibit 10, pp. 133-34)

In January of 2009, Assistant Controller Angela Conner formally complained that Cordero entered her office peremptorily, interrupted her meeting with a vender, and demanded a payroll check for 30 minutes that he had not been paid for. (Doc. 94, ¶ 20, Exhibit 12) She found him to be "not only rude but disrespectful." (Doc. 94, Exhibit 12) As a result, Cordero was given a Performance Improvement Plan and a written warning. (Doc. 94, ¶ 21, Exhibit 13)

Cordero's grandmother, Socorro Esquibel, contacted human resources explaining that she did not believe Cordero's behavior was rude. (Doc. 94, Exhibit 17) She asked for permission to sit in on Cordero's next performance meeting so she could monitor his medical condition. *Id*. Miraval agreed, provided that she would be only a silent observer. (Doc. 94, Exhibit 18) Apparently she was not silent, and Miraval decided she could not attend meetings in the future. (Doc. 94, ¶ 29)

At this point, Miraval provided Cordero with formal ADA request forms and asked that they be completed by him and his doctor. (Doc. 94, ¶ 30) Cordero eventually complied with the request, but his response was not entirely clear, and his medical documentation was not entirely specific or up-to-date. For example, he submitted a letter from his neurologist, Hemant

Kudrimoti, dated more than two years earlier, on November 7, 2006, stating that he needed "no particular accommodations." (Doc. 94, ¶ 33)

On March 4, 2009, Cordero submitted an ADA Reasonable Accommodation Request: Employee form in which he stated that his condition results in "no limitations [with] medical compliance." (Doc. 94, Exhibit 23, MIRAVAL000083) Nevertheless, he asked for three accommodations: (1) that Miraval document any seizures that he might have for the purposes of adjusting his medication; (1) that his grandmother be allowed to attend his weekly work evaluations; and (2) that he be allowed time for the side effects of a seizure to pass. (Doc. 94; Exhibit 23, MIRAVAL000084; Exhibit 24, MIRAVAL000090) Miraval agreed to document Cordero's seizures, declined permission for his grandmother to attend future work evaluations, and asked for more information regarding his request for recovery time. (Doc. 94, ¶¶ 46, 47, 48)

On March 18, 2009, Cordero submitted a list of ten additional requests for accommodation (or points of concern): (1) for permission to place his medications in a place where he and others would have access to them, (2) for a private area in which to rest after a seizure, (3) for permission to work a later shift following a day during which he has a seizure, (4) for co-workers to inform the supervisor if he is having a seizure and to not be forced to socialize with his co-workers, (5) for incident reports and evaluation notes, (6) for his supervisor to be aware that his mood might be affected by his medication, (7) that his weekly evaluations be staffed only by his supervisor, (8) that no one should represent LeAnne Hamon at weekly evaluations other than herself due to privacy concerns, (9) that he should not suffer retaliation for requesting that his grandmother attend his weekly evaluations, and (10) that he was experiencing harassment and retaliation because (a) he was summoned to a meeting on January 14, 2009 and asked to respond to an accusation of being aggressive toward an employee of the payroll office, (b) his weekly reviews are very uncomfortable because he has had six different individuals attending, and (c) he was called into a meeting on March 13, 2009 with LeAnne Hamon and Brenda Helps and accused of "having a voice recorder and violating

1  confidentiality." (Doc. 94, Exhibit 25, MIRAVAL 000018- 000020)  Miraval agreed to provide
2  some of these accommodations, but not all.

3        Cordero was permitted to keep his medications in an area accessible to him and other
4  employees, but with the understanding that Miraval would not be responsible if they were lost
5  or stolen. (Doc. 94, ¶ 54) Cordero's supervisors would ask him about his well-being, but with
6  the understanding that they were not trained or qualified to properly access his condition. *Id*.
7  Cordero could use the Food & Beverage Office, the Coyote Moon dining area (when not in use),
8  or the Cooking Demonstration area (when not in use) for resting and recovery. *Id*. Cordero
9  could use intermittent leave under the Family Medical Leave Act (FMLA) for disability related
10 absences. *Id*. Cordero was not required to socialize with his co-workers, but he was required
11 to "interact with [his] co-workers in a professional and friendly manner." *Id*. Miraval would
12 provide Cordero and his physicians with incident reports as well as his performance reviews and
13 notices. *Id*. Miraval, however, refused to limit participation at Cordero's weekly evaluation
14 meetings to only his supervisor. (Doc. 94, ¶ 56) Miraval affirmed its policy against retaliation
15 and asked that Cordero raise specific issues should they occur. (Doc. 95, ¶ 57) Miraval
16 renewed its request that Cordero have his doctors provide specific information about which
17 accommodations were necessary for his condition. (Doc. 95, ¶ 58)

18       On April 15, 2009, Cordero replied to Miraval's response indicating his general
19 acceptance of its decisions regarding his requests for accommodations. (Doc 94, Exhibit 28)
20 He accepted generally that the staffing of work evaluation meetings was an employee relations
21 matter. (Document 94, ¶ 59)  He disputed, however, Miraval's statement that his supervisors
22 are not medically trained arguing that his supervisor has had three years of paramedic training
23 "and is qualified to assist in my safety and well being post-seizure activity." (Doc. 94, Exhibit
24 28, MIRAVAL000174) He did not accept Miraval's decision that coming in late on a day after
25 he had a seizure would require him to take formal leave under the FMLA. (Doc. 94, Exhibit
26 28, MIRAVAL000175)

27
28
- 4 -

In July of 2009, Cordero took leave pursuant to the Family and Medical Leave Act (FMLA). (Doc. 94, ¶ 66) He had surgery to treat his epilepsy and subsequently suffered a disabling stroke. (Doc. 94, Exhibit 36) His neurologist, Hemant Kudrimoti, informed Miraval of Cordero's condition explaining that he will likely "remain disabled into the foreseeable future, and predictably for a minimum of at least 12-18 months." *Id.* Cordero's FMLA leave expired in September of 2009, and he was placed on unpaid leave. (Doc. 94, ¶ 70) On January 8, 2010, Kudrimoti sent Miraval an updated evaluation of Cordero's condition. (Doc. 94, ¶ 71) He confirmed that Cordero was medically disabled. *Id.* Miraval formally terminated Cordero's employment on February 28, 2010. (Doc. 94, ¶ 73)

Cordero obtained through his employer disability insurance, which was administered by the Lincoln National Life Insurance Company. (Doc. 94, ¶ 79, 84) He applied for disability benefits, and on July 13, 2009, Miraval sent to the plan administrator information about Cordero's job. (Doc. 94, ¶ 86) Miraval stated that Cordero was a "Class 2" employee. (Doc. 94, ¶ 86) After Cordero began receiving disability insurance payments, it was discovered that Miraval's information was incorrect and Cordero was, in fact a "Class 10" employee and entitled to benefits for a longer period of time. (Doc. 94, ¶¶ 88-92) Class 2 employees are "full-time employees of Accelerate Brain Cancer Cure, Inc." (Doc. 94, Exhibit 43, LN_Cordero_00034) Class 10 employees are "full-time employees of Miraval excluding Massage Therapists, Salon Employees, Estheticians and Aqua Zen Therapists." (Doc. 94, Exhibit 43, LN_Cordero_00040)

Previously, in early 2009, Cordero contacted the Arizona Attorney General's office to make an EEOC complaint. (Doc. 115-3, p. 2) He apparently was interviewed on May 7, 2009, but a formal Charge of Discrimination was not completed until April 14, 2010. (Doc. 115-3, p. 2); (Doc. 94, Exhibit 42) In that charge, Cordero claimed Miraval discriminated against him by rescinding his reasonable accommodations in January of 2009, placing him on probation, and giving erroneous information to his disability insurance carrier. *Id.*

On October 27, 2012, Cordero initiated this action by filing a complaint in this court. He filed his Second Amended Complaint on December 8, 2011. (Doc. 54) That complaint is separated into three counts (1) "ERISA Violations and Discrimination Arising under ERISA," (2) "Violations of the ADA," and (3) "Violation of Civil Rights Act of 1981."[1] The two Miraval defendants filed an answer on December 22, 2011. The two Lincoln Insurance defendants filed an answer on December 23, 2011.

Cordero subsequently reached a settlement with the Lincoln Insurance defendants. They were dismissed by stipulation on May 30, 2012. (Doc. 99)

The remaining defendants, Miraval Holding LLC and Miraval Resort Tucson LLC (collectively, Miraval), move for summary judgment pursuant to Fed.R.Civ.P. 56. (Doc. 93) Miraval argues that Cordero's Charge of Discrimination was filed more than 300 days after the alleged discriminatory acts. It argues in the alternative that it provided Cordero with all accommodations required by law. It further argues it did nothing to violate ERISA because it is not the plan administrator and has no fiduciary duties.

Standard of Review: Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

---

[1] The court assumes Cordero intended to reference the Civil Rights Act of *1991*, 42 U.S.C. § 1981a. *See* (Doc. 54, ¶ 4); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 283, 122 S.Ct. 754, 758 (2002).

- 6 -

1    The initial burden rests on the moving party to point out the absence of any genuine issue
2 of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If
3 the moving party has the burden of proof at trial, that party carries its initial burden by
4 presenting evidence showing no reasonable trier of fact could find for the nonmoving party.
5 *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *U. S. v. Four Parcels of Real
6 Property*, 941 F.2d 1428, 1438 (11th Cir. 1991). If the moving party does not have the burden
7 of proof at trial, that party carries its initial burden by either presenting evidence negating an
8 essential element of the nonmoving party's claim or demonstrating the nonmoving party cannot
9 meet its burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552; *Nissan
10 Fire & Marine Insurance v. Fritz*, 210 F.3d 1099, 1102 (9th Cir. 2000).

11   Once satisfied, the burden shifts to the nonmovant to demonstrate through production
12 of probative evidence that an issue of fact remains to be tried. *Celotex,* 477 U.S. at 324, 106
13 S.Ct. at 2553. Summary judgment is appropriate "against a party who fails to make a showing
14 sufficient to establish the existence of an element essential to the party's case, and on which that
15 party will bear the burden of proof at trial." *Thomas v. Douglas*, 877 F.2d 1428, 1430 (9th Cir.
16 1989).

17   When considering a motion for summary judgment, the court is not to make credibility
18 determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.
19 1990). Instead, the court should draw all inferences in the light most favorable to the
20 nonmoving party. *Id.* That said, it remains the job of the nonmoving party "to identify with
21 reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91
22 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. San Francisco Unified School Dist.*, 237
23 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence
24 establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers
25 with adequate references so that it could conveniently be found.").

1  The court finds that Miraval's summary judgment motion should be granted on the
2 merits. The court does not reach Miraval's argument that Cordero's Charge of Discrimination
3 was filed more than 300 days after the alleged discriminatory acts.

Discussion: ERISA

In Count I of the Second Amended Complaint, Cordero claims the Lincoln defendants failed to give him the latest available summary plan description. (Doc. 54) He does not, however, clearly explain what the *Miraval* defendants did to violate ERISA. In a previous paragraph, however, Cordero states that actions by "Lincoln Financial Plan and Employer as fiduciary" "caused him to incur attorney's fees and costs . . . ." (Doc. 54, ¶ 28) Accordingly, the court will construe Count I of the complaint as claiming the employer, Miraval, breached its fiduciary obligations to Cordero. *See also* (Doc. 114, p. 43) (asserting that "Plaintiff's allegations are controlled by his Second Amended Complaint" but declining to further explain the nature of his ERISA claim against his employer)

Unfortunately, as Miraval points out, Lincoln Financial is designated the plan administrator of Cordero's ERISA disability plan. Accordingly, Lincoln Financial is the only defendant with a fiduciary responsibility to Cordero. *See Beck v. PACE Intern. Union*, 551 U.S. 96, 101, 127 S.Ct. 2310, 2316 (2007) (An employer has fiduciary duties only when it acts as the plan administrator, not as the plan sponsor.); *Varity Corp. v. Howe*, 516 U.S. 489, 498, 116 S.Ct. 1065, 1071 (1996) ("[A] person is a fiduciary with respect to a plan, and therefore subject to ERISA fiduciary duties, to the extent that he or she exercises any discretionary authority or discretionary control respecting management of the plan, or has any discretionary authority or discretionary responsibility in the administration of the plan.") (punctuation modified).

The defendants, as Cordero's employer, have no fiduciary duties, and cannot be held liable for a breach of those non-existent fiduciary obligations. The defendants are entitled to

1  summary judgment[2] on Count I.  *See, e.g.*, *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010) (Employer who "received [the employee's] claims for disability benefits, completed the employer portion of the forms and passed the forms to . . . , the plan administrator" was not liable in action brought to recover ERISA benefits.).

Discussion: ADA

In Count II, Cordero claims Miraval violated his rights under the ADA.  Unfortunately, he does not specify in his complaint what Miraval did to violate that statute.  Based on his Charge of Discrimination, the court considers whether or not Cordero can prove Miraval failed to provide him with reasonable accommodations or retaliated against him by placing him on probation.  *See, e.g., Indergard v. Georgia-Pacific Corp.*, 2010 WL 331774, 8 (D.Or. 2010) ("The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision.").

The ADA prohibits workplace "discriminat[ion] against a qualified individual on the basis of disability . . . ."  42 U.S.C. § 12112(a).  Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . . ."  42 U.S.C. § 12112(b)(5)(A).

In his Charge of Discrimination, Cordero alleged generally that he was denied reasonable accommodations beginning in January of 2009.  (Doc. 94, Exhibit 42, MIRAVAL-EEOC000036)  It is not clear, however, precisely which accommodations he was referring to.  The record indicates that in early 2009, the defendants gave Cordero formal ADA forms asking

---

[2]  The record indicates that the erroneous information initially supplied by Miraval has since been corrected, and Cordero is receiving the benefits due him under the plan. (Doc. 94, ¶ 92) Accordingly, if this were a claim for payment of benefits, it could be dismissed as moot. *See, e.g., Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 493 (7th Cir. 2011).

- 9 -

1  him to describe the accommodations that he was seeking and provide medical documentation
2  in support of those accommodations. Cordero responded with some 13 partially overlapping
3  requests. Most of these requests were granted either in whole or in part. In his reply, Cordero
4  seemed to understand there were some things that the defendants could not agree to because of
5  legitimate business concerns. There were two denials, however, that Cordero seemed to object
6  to specifically: (1) Miraval's refusal to allow his grandmother to attend his work meetings and
7  (2) Miraval's insistence that he use FMLA time when he needed to take time off from work the
8  day after he had a seizure. The court finds that Miraval's failure to allow these accommodations
9  did not constitute ADA discrimination.

10  "Determining whether a proposed accommodation . . . is reasonable, including whether
11 it imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry.
12 *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999). "In the summary judgment
13 context, a court should weigh the risks and alternatives, including possible hardships on the
14 employer, to determine whether a genuine issue of material fact exists as to the reasonableness
15 of the accommodation." *Id*.

16  Here, Cordero asked for permission to have his grandmother attend his workplace
17 evaluations. He supported his request with a note from his physician. He believed that having
18 her at his evaluation meetings would allow her to monitor his condition and report her
19 observations to Cordero's physicians. The defendants attempted to accommodate this request
20 by allowing Cordero's grandmother to attend one such meeting provided she remain silent.
21 (Doc. 94, Exhibit 19, MIRAVAL000102, ¶ 5) Apparently she was unable to remain silent, and
22 the defendants decided she could not attend meetings in the future. (Doc. 94, Exhibit 19,
23 MIRAVAL000102, ¶ 2) The record indicates that Cordero's grandmother was unable to abide
24 by the conditions set by the defendants. Her presence disrupted the conduct of the meeting.
25 Accordingly, having her attend Cordero's workplace meetings would be an undue hardship for
26 the defendants. Miraval's failure to allow Cordero's grandmother to attend his workplace
27 meetings was not discrimination under the ADA.

28

Cordero also takes issue with the defendants' response that he could take FMLA leave if he had a seizure and needed to come to work late the next day. Cordero apparently believed that he should be permitted to come to work late without taking leave. Miraval's failure to accommodate Cordero on this issue, however, does not constitute discrimination because that failure had no effect on Cordero's employment.

A "reasonable accommodation" is one that enables the employee to perform the essential functions of the job (without causing undue hardship for the employer). *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006), *cert. denied*, 549 U.S. 1205 (2007); 29 C.F.R. app. § 1630(o). Accordingly, an accommodation that has no effect on the employee's performance can hardly be said to be reasonable, and the failure to provide that accommodation is not discrimination under the ADA. Here, the defendants' insistence that Cordero draw down his FMLA leave allowance when he came to work late after suffering a seizure did not affect his employment and did not constitute discrimination.

If the defendants' insistence that Cordero take FMLA leave caused him to run out of leave and resulted in discipline or termination, failure to accommodate Cordero on this issue could rise to an ADA violation. The record indicates, however, that Cordero was not disciplined or terminated when he ran out of FMLA leave. On the contrary, the defendants put Cordero on unpaid leave until his doctor informed the defendants that Cordero was unable to return to work. And, they did not finally terminate him until more than one month later, at Cordero's request. The defendants' insistence that Cordero draw down his FMLA leave allowance when he took time off the day after he had a seizure did not affect his employment at all. Accordingly, the defendants' failure to allow this accommodation could not have violated the ADA. *See, e.g., Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 108 (2nd Cir. 2001) (Failure to provide accommodation does not result in an ADA violation if the failure does not result in an adverse employment action because of disability.).

Cordero further argues that the defendants' accommodations were not reasonable because they were not granted when he was first diagnosed with epilepsy in 2007. (Doc. 114,

- 11 -

1  p. 30)  He points to a report by his physician, dated January 31, 2007, stating that he can
2  perform activity only "as tolerated." (Doc 115-1, p. 31)  Cordero has not, however, provided
3  any evidence that he asked for specific accommodations at that time.

4       "Where the disability, resulting limitations, and necessary reasonable accommodations,
5  are not open, obvious, and apparent to the employer, as is often the case when mental
6  disabilities are involved, the initial burden rests primarily upon the employee, or his health-care
7  provider, to specifically identify the disability and resulting limitations, and to suggest the
8  reasonable accommodations." *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th
9  Cir. 1996).  Cordero provides no evidence that he asked for any specific accommodations back
10 in 2007.  It is not reasonable to expect that Miraval could infer from his physician's vague
11 statement that Cordero needed specific accommodations to perform his job.  Accordingly, the
12 defendants' failure to provide accommodations at that time was not a violation of the ADA.  *See*
13 *also* (Doc. 94, ¶ 33) (In November 2006, Cordero's neurologist, Hemant Kudrimoti, wrote that
14 Cordero needed "no particular accommodations.").

15       Cordero further claims the defendants placed him on probation in retaliation for asking
16 for reasonable accommodations.

17       To establish a prima facie case of retaliation under the ADA, an employee must show
18 that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action;
19 and (3) there was a causal link between the two.  *Pardi v. Kaiser Foundation Hospitals*, 389
20 F.3d 840, 849 (9th Cir. 2004).  " If the employee establishes a prima facie case, the employee
21 will avoid summary judgment unless the employer offers legitimate reasons for the adverse
22 employment action, whereupon the burden shifts back to the employee to demonstrate a triable
23 issue of fact as to whether such reasons are pretextual."  *Id*.  To prove the employer's proffered
24 reasons are pretextual, the employee may present evidence showing that "a discriminatory
25 reason more likely motivated the employer or that the employer's proffered explanation is
26 unworthy of credence."  *Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003).
27 Evidence of pretext may be direct or circumstantial. But "[u]nder Ninth Circuit law,
28

- 12 -

1  circumstantial evidence of pretext must be specific and substantial in order to survive summary
2  judgment." *Id*. (punctuation modified).

3  On January 15, 2009, the defendants presented Cordero with a written warning and a
4  Performance Improvement Plan (PIP). (Doc. 94, Exhibit 13, MIRAVAL000036) These
5  actions were apparently triggered by an incident that happened in December of 2008.
6  According to Assistant Controller Angela Conner, on December 24, 2008, Cordero entered her
7  office peremptorily, interrupted her meeting with a vender, and demanded a payroll check for
8  30 minutes that he had not been paid for. (Doc. 94, ¶ 20, Exhibit 12) Connor found him to be
9  "not only rude but disrespectful." (Doc. 94, Exhibit 12)

10  Cordero believes the warning and PIP was retaliation for his requests for
11  accommodation. Assuming he has established a prima facie case for retaliation, the defendants
12  have proffered a legitimate business reason for the disciplinary action: Cordero's behavior was
13  rude and unprofessional. The burden then shifts to Cordero to provide evidence from which a
14  reasonable factfinder could conclude that the defendants' proffered reason is a pretext for illegal
15  discrimination. He has not done so.

16  In his declaration filled in opposition to the motion, Cordero asserts that this discipline
17  was retaliation for asserting his rights under the ADA. (Doc. 115, p. 7, ¶ 29; p. 9, ¶ 37) He
18  maintains that other employees were upset that they lost 30 minutes of pay, but he was the only
19  one retaliated against. *Id*., p. 9, ¶ 37. Unfortunately, he provides no evidence to support his
20  allegations. *See Ballen v. City of Redmond*, 466 F.3d 736, 745 (9th Cir. 2006) ("A trial court
21  may only consider admissible evidence in ruling on a motion for summary judgment."). And,
22  even if he could, it would be somewhat beside the point. The defendants argue he was
23  disciplined, not because he was upset at missing 30 minutes of pay, but because he was rude and
24  disrespectful to Angela Conner. Cordero provides no evidence that others *acted* as he did but
25  were not subject to the same discipline.

26  Cordero maintains that the defendants have a "practice of terminating disabled persons
27  from its employment" and that their "advertising/public relations department recommends

28

against showing pictures of persons with disabilities in the [defendants'] employ . . . ." *Id.*, p. 5, ¶¶ 17, 18. If so, this would be some evidence of a corporate culture biased against persons with disabilities. Cordero, however, provides no admissible evidence to support his allegations.

Cordero has not provided evidence that suggests that the defendants' proffered reasons for the discipline are a pretext for unlawful retaliation. Accordingly, there is no genuine issue of material fact, and the defendants are entitled to judgment as a matter of law on Cordero's retaliation claim.

Discussion: 42 U.S.C. § 1981a

In Count III, Cordero argues that Miraval's violation of his rights under the ADA entitles him to "compensatory and punitive damages" pursuant to 42 U.S.C. § 1981a.[3] (Doc. 54, ¶ 41) This statute, however, is a damages provision and does not constitute a separate cause of action. *Koontz v. USX Corp.*, 2001 WL 752656, 7 (E.D.Pa. 2001); *see also Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848, 121 S.Ct. 1946, 1949 (2001). Accordingly, the court construes Count III as a part of Cordero's demand for relief. *See* Fed.R.Civ.P. 8(a)(3). It is not a separate claim for the purposes of Fed.R.Civ.P. 56.

//
//
//

---

[3] Cordero labels Count III as "Violation of Civil Rights Act of 1981" and cites to "42 U.S.C. § 1981." (Doc. 54, pp. 7-8) In the same section of his complaint, however, he states he is entitled to "compensatory and punitive damages" and that Miraval failed to make "good faith efforts" to accommodate him. *Id.*; *see also* 42 U.S.C. § 1981a(a)(1, 3). Accordingly, the court construes Count III as a reference to the Civil Rights Act of *1991*, 42 U.S.C. § 1981*a*. *See Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529, 119 S.Ct. 2118, 2121 (1999) ("Under the terms of the Civil Rights Act of 1991 . . ., punitive damages are available in claims under . . . the Americans with Disabilities Act of 1990 . . . .").

Recommendation

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order GRANTING the motion for summary judgment filed on May 16, 2012, by the defendants, Miraval Holding, LLC and Miraval Resort Tucson. (Doc. 93)

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation.   If objections are not timely filed, the party's right to de novo review may be waived. *See U. S. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

DATED this 17th day of January, 2013.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge